IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMARIS WHITAKER,<br>    Plaintiff,<br><br>    v<br><br>BERNARD FIRMAN<br>*and* OHM ENTERTAINMENT, INC.,<br>*doing business as*<br>STATIC,<br>    Defendants. | )<br>)<br>)<br>) 2:12-cv-224<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is the MOTION FOR SUMMARY JUDGMENT (ECF No. 36) filed by Defendants Bernard Firman ("Firman") and Ohm Entertainment, Inc., d/b/a Static ("Static" or the "Nightclub") (collectively, the "Defendants"), with MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 37). Plaintiff Amaris Whitaker ("Plaintiff") has filed a RESPONSE TO MOTION FOR SUMMARY JUDGMENT (ECF No. 39), in reply to which Defendants filed DEFENDANTS' BRIEF IN REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT (ECF No. 42). The issues have been fully briefed and the factual record has also been developed via Defendants' CONCISE STATEMENT OF MATERIAL FACTS (ECF No. 38), Defendants' APPENDIX TO CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT (ECF No. 36-3), Plaintiff's COUNTERSTATEMENT OF MATERIAL FACT (ECF No. 40), and Plaintiff's APPENDIX TO RESPONSE TO MOTION FOR SUMMARY JUDGMENT (ECF No. 41). Accordingly, the motion is ripe for disposition.

## I. Factual and Procedural History

As the law requires, all disputed facts and inferences are to be resolved in a manner that is most favorable to the Plaintiff, the nonmoving party.[1] Plaintiff, a graduate student at Carnegie Mellon University ("CMU"), suffers from a rare congenital joint disease known as arthogryposis. Compl. ¶¶ 9, 11. The disease restricts Plaintiff's ability to stand and walk. *Id.* ¶¶ 12. She can stand still for only about one minute before she starts to feel pain and can engage in other activities, such as walking or dancing, for only slightly longer before pain sets in. *Id.* ¶¶ 13-14. The only way in which she can alleviate the pain is by sitting down. *Id.* ¶ 15.

This lawsuit stems from a pair of incidents that allegedly occurred on December 17, 2011, and February 1, 2012, respectively, at Defendants' Nightclub. On December 17, the Plaintiff went to the Nightclub, which she had visited approximately three times before, to dance with several of her friends. *Id.* ¶¶ 24-25. One of Plaintiff's friends moved a bar stool onto the dance floor to allow her to rest in between dances. Defs.' Concise Stmt. of Material Facts ¶ 3. At some point thereafter, a staff member of the Nightclub told Plaintiff that she had to remove the stool from the dance floor. *Id.* ¶ 4.

The dance floor of the Nightclub is apparently surrounded by an area designated for "VIPs" only. Compl. ¶ 22. The "VIP" area includes tables and stools, as well as couches. *Id.* ¶¶ 21-22. After the Plaintiff was told she was not permitted to have a stool on the dance floor, she twice attempted to sit in the "VIP" area: once on a couch and once on a stool. Compl. ¶¶ 30-31. Each time, she was told that she was not permitted to sit in the "VIP" area because she had not

---

[1] These facts are taken from the Concise Statement of Material Facts filed by Defendants (ECF No. 38), which contains numbered paragraphs and citations to the record in accordance with Local Rule 56.1(B)(1) and the Counterstatement of Material Fact filed by Plaintiff (ECF No. 40), which also contains numbered paragraphs and citations to the record.

reserved a table or spent the amount of money at the Nightclub that is required in order to sit in the "VIP" area. *Id.* Eventually, Firman approached Plaintiff and offered her a seat outside the "VIP" area. Defs.' Concise Stmt. of Material Facts ¶ 5. Plaintiff continued to sit in this seat throughout the rest of the night. *Id.* ¶ 7. Firman further advised Plaintiff that she should call in advance of her next visit to the Nightclub in order to reserve a seat. *Id.* ¶ 8.

On February 11, 2012, Plaintiff called Static to make such an arrangement. *Id.* ¶ 10; Pl.'s Dep. at 37. At this time, an employee of the Nightclub informed Plaintiff that "VIP" tables could be reserved only if the table opened a $100.00 bar tab. *Id.* ¶ 11. Plaintiff then explained to the employee that she was not requesting a "VIP" table, but rather simply wanted a place where she could sit to rest between dances. Pl.'s Concise Stmt. of Material Facts ¶ 12. The employee responded by saying that he would speak with his manager and then back to her, but the employee allegedly never called back. *Id.* ¶ 10.

Nonetheless, later on February 11, 2012, Plaintiff and a friend, Crystal Klein ("Klein"), decided to go to the club anyway. *Id.* ¶ 13. Before Plaintiff and Klein entered the Nightclub, Firman approached them to discuss where the Plaintiff could sit once inside. Defs.' Concise Stmt. of Material Facts ¶ 14. During this discussion, Firman stated, "I remember you from last time. Okay. I'm going to show you the stool, but I better not see you on my dance floor." Pl.'s Dep. at 48. It is not disputed that although Firman did not expressly make any statements regarding Plaintiff's disability, he was aware at this time that she was disabled based on their previous encounter on December 17, 2012. Pl.'s Dep. at 48; Def.'s Dep. at 45. At the end of this exchange, which Plaintiff considered "unnerving and unpleasant," Firman told Plaintiff and Klein that they "could not come in" the Nightclub. Defs.' Concise Stmt. of Material Facts at ¶ 15; Pl.'s Dep. at 48-49. Defendants suggest that Plaintiff and Klein were not permitted to enter

3

because they were being disorderly, but the record does not contain any specific evidence to support that assertion. After the incident, Plaintiff never attempted to return to Static. Pl.'s Dep. at 64. The record does not make any references to whether she has any intention of attempting to return to the Nightclub.

Plaintiff apparently visited CMU's on-campus counseling center for an intake appointment sometime after the incident, but she never actually received any treatment through the center. Defs.' Concise Stmt. of Material Facts at ¶ 23. Nor did she receive treatment from any other mental health provider or physician on account of the incidents. *Id.* ¶ 24.

On February 23, 2012, Plaintiff initiated this lawsuit by filing a Complaint that alleged violations of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182 (West, Westlaw through P.L. 113-22) ("Title III of the ADA") against Firman and Static. (ECF No. 1). Invoking this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 (West, Westlaw through P.L. 113-22), Plaintiff also alleged a claim for intentional infliction of emotional distress ("IIED") under Pennsylvania law. Defendants' filed their Answer on April 16, 2012. (ECF No. 5). After the parties engaged in extensive discovery, Defendants' filed the instant Motion, which seeks summary judgment with respect to both Counts of Plaintiff's Complaint.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (internal quotation marks omitted).

4

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id*. at 247-48. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, *i.e.*, the material facts, however, will preclude summary judgment. *Id*. at 248. Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. In determining whether the dispute is genuine, the court's function is not to weigh the evidence but rather to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. It is on this standard that the Court has reviewed the motion and responses filed by the parties.

### III. Legal Analysis

#### A. Count I – Discrimination in Public Accommodation on the Basis of Disability

Defendants seek summary judgment as to Count I, arguing that the Plaintiff has failed to adduce sufficient evidence to establish that she was discriminated against on the basis of her disability. Title III of the ADA provides, as a "[g]eneral rule," that:

> [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Under Title III, private plaintiffs are limited to recovering prospective injunctive relief; monetary damages are not available. *Anderson v. Kohl's Corp.*, No. 12-00822, 2013 WL 1874812, at *3 (W.D. Pa. May 3, 2013).

To prevail on a claim under Title III, a plaintiff must show that (1) she is disabled; (2) she suffered discrimination in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation on the basis of her disability; and (3) the defendant(s) either owned, leased or operated the place of public

5

accommodation. *See Anderson v. Macy's, Inc.*, -- F. Supp. 2d --, No. 12-556, 2013 WL 1857535, at *8 (W.D. Pa. May 2, 2013) (internal quotation marks omitted); *In re Allegheny Health, Educ. and Research Found.*, 321 B.R. 776, 793 (Bankr. W.D. Pa. 2005) (internal citation omitted). As relevant to Plaintiff's claim, the definition of "discrimination" under Title III embraces two concepts. "Discrimination" is defined to include the denial of an opportunity "to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation" of a place of public accommodation. 42 U.S.C. § 12182(b)(1)(A)(i). Title III further requires a place of public accommodation to "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. . . ." *Id.* § 12182(b)(2)(A)(ii).

Before reaching the merits of the parties' arguments, it is necessary for the Court to determine whether Plaintiff has standing to raise an ADA claim for prospective injunctive relief. Although the parties have not addressed this issue in their briefs, standing is a jurisdictional prerequisite to bringing suit. *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997). Thus, even if a defendant fails to raise the issue of standing, the Court must do so *sua sponte* when necessary. *See In re Bowen*, No. 08–4724, 2009 WL 1173522, at *2 (D.N.J. April 24, 2009); *W.G. Nichols, Inc. v. Ferguson*, No. 01-834, 2002 WL 1335118, *9 (E.D. Pa. June 7, 2002). Doing so is necessary here, as the summary judgment record lacks evidence sufficient to establish that Plaintiff has suffered the requisite constitutional injury for seeking an injunction.

The constitutional requirement of standing has three elements: "injury in fact (a concrete harm suffered by the plaintiff that is actual or imminent), causation, and redressability." *Doe v.*

*Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 152 (3d Cir. 1999) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  The plaintiff has the burden of establishing each of these elements "'in the same way as any other matter on which [she] bears the burden of proof, *i.e.* with the manner and degree of evidence required at the successive stages of litigation.'" *Id.* (quoting *Lujan*, 504 U.S. at 561)).  Therefore, at the summary judgment stage, a plaintiff must "set forth by affidavit or other evidence specific facts" showing that all three requirements have been met.  *Freeman v. Corzine*, 629 F.3d 146, 153 (3d Cir. 2010) (internal quotation marks omitted).

Furthermore, where, as in this case, a plaintiff requests prospective injunctive relief, there must be evidence of a "real and immediate threat" of future injury to satisfy the "injury in fact" requirement.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 103-04 (1983).  As the Third Circuit Court of Appeals has explained, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . ."  *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (internal quotation marks omitted).  Instead, a plaintiff must establish an actual threat that he or she will be exposed to the allegedly unlawful conduct again in the future.  *Id.*

Importantly, our appellate court has concluded that the general principles of standing are equally applicable under Title III of the ADA.  *See Doe*, 199 F.3d at 153.  In order to determine whether the Plaintiff has established sufficient evidence of standing to withstand summary judgment, the Court must find that it is likely that Plaintiff would return to Static in the imminent future "but for" the alleged violation of the ADA.  *See Access 4 All, Inc. v. Absecon Hosp. Corp.*, No. 04-6060, 2006 WL 3109966, at *6 (D.N.J. Oct. 30, 2006); *Nichols*, 2002 WL 1335118, at *10 (internal quotation marks omitted).  Mere allegations of "someday" intentions are not

sufficient. *Lujan*, 504 U.S. at 564. A plaintiff must "put forth a definitive, uncontested intent to return before filing the complaint to establish standing." *Macy's, Inc.*, 2013 WL 1857535, at *6; *see Nichols*, 2002 WL 1335118, at *12 ("[A] party must have definite plans to do or visit 'X' for that party to have standing to seek equitable relief with respect to the conditions of 'X.'"). In the alternative, a plaintiff may establish standing by showing that she has been or will be deterred from visiting the defendant's public accommodation because of the alleged ADA violation, despite her interest in doing so. *See Klaus v. Jonestown Bank and Trust Co. of Jonestown*, No. 12-2488, 2013 WL 4079946, at * 5 (M.D. Pa. Aug. 13, 2013).

Applying those principles here, the Court finds that Plaintiff has presented absolutely no evidence that she intended to patronize Static in the imminent future – if ever again. Nor has she adduced any evidence that she had a reasonable desire in doing so again but was deterred by Defendants' allegedly discriminatory conduct.

In fact, the only evidence that relates to Plaintiff's future intentions with regard to Static suggests that she has no interest in ever returning. In particular, during her deposition, the following exchange took place between Defendants' counsel and the Plaintiff:

> Q: I already know the answer to this, but I have to ask you anyway: Did you ever try to go back to Static after February 11th?
>
> A: No.

Pl.'s Dep. at 64. Furthermore, according to Plaintiff's deposition, she had only visited Static approximately three times prior to the incidents which give rise to this lawsuit. *Id.* at 26. This fails to establish a pattern of past patronage at Static sufficient to create an inference that Plaintiff would likely visit Static again in the imminent future. *Compare Cottrell v. Zagami, LLC*, No. 08-3340, 2010 WL 2652229, at *2 (D.N.J. June 23, 2010) (holding that the plaintiff possessed standing because she had previously visited defendant's bar, the bar was frequented by the

plaintiffs' friends, and plaintiff expressly desired to return to the bar in the future); *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 343 (D.N.J. 2003) (holding that the plaintiff had standing where he established that she visited Burger King Restaurants in the past and several of such restaurants were located within reasonable distances from her home) *with Macy's*, 2013 WL 1857535, at *6 (finding that plaintiff lacked standing in part because she had only visited defendant's store once prior to filing suit). It is worth noting that nothing in the record indicates that Plaintiff experienced any form of allegedly discriminatory treatment on her prior visits to Static, which further belies a finding that she might suffer such treatment again in the future.

In sum, Plaintiff has not alleged, let alone set forth any specific evidence, that she will suffer an injury at the hands of Defendants in the future. This is fatal to her claim for an injunction under the ADA. Accordingly, the Court need not consider the merits of Plaintiff's claim of disability discrimination, and the Defendants' Motion for Summary Judgment will be **GRANTED** as to Count I.

B.  Count II – Intentional Infliction of Emotional Distress

In Count II, Plaintiff raises a claim for IIED under Pennsylvania law. She avers that Firman caused her severe emotional distress on the night of February 11, 2013, by allegedly making statements regarding her disability in front of Nightclub patrons and eventually refusing her entry into the Nightclub. She further avers that Static is vicariously liable for Firman's conduct as he was acting within the scope of his employment when the alleged tort occurred. Defendants argue that summary judgment should be granted on the grounds that (1) Firman's conduct was not so "extreme and outrageous" as to support a claim for IIED, and (2) the Plaintiff has presented no competent medical evidence to support her claim of severe emotional distress. The Court agrees with both of the Defendants' contentions.

As the Third Circuit Court of Appeals has recognized, "Pennsylvania courts have been cautious in permitting recovery for [IIED]." *Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989) (citing *Bradshaw v. Gen. Motors*, 805 F.2d 110, 114 (3d Cir. 1986)). To recover for IIED, a plaintiff must establish that the defendant engaged in "extreme and outrageous conduct," which "intentionally or recklessly causes severe emotional distress to another . . . ." *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 991 (Pa. 1987) (citing *Restatement (Second) of Torts* § 46(1)). Whether a defendant's conduct can be reasonably considered "extreme and outrageous" is question for the Court to decide. *Bryan v. Erie Cnty. Office of Children & Youth*, 861 F. Supp. 2d 553, 586 (W.D. Pa. 2012).

Conduct is "extreme and outrageous" only when it is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Kazatsky*, 527 A.2d at 991 (quoting *Restatement (Second) of Torts* cmt. d). Conversely, "mere insults, threats, annoyances, petty oppressions, or other trivialities" are not actionable. *Id.*

In this case, even viewing the evidence in the light most favorable to Plaintiff, the nonmoving party, the summary judgment record contains insufficient evidence to show that Firman engaged in "extreme and outrageous" conduct or that he acted with the requisite intent or recklessness. The only evidence Plaintiff has offered in support of her claim is that on February 11, 2012, Firman: (1) stated to her, "I remember you from last time. Okay. I'm going to show you the stool, but I better not see you on my dance floor;" (2) refused to permit her to enter the Nightclub; and (3) engaged in an exchange with Plaintiff and Klein, which Plaintiff called "unnerving and unpleasant." Pl.'s Dep. at 48-49. While Firman's conduct may have been "unpleasant," it did not, as a matter of law, rise to the level of "extreme and outrageous."

10

Furthermore, the Plaintiff's allegations of disability discrimination are not enough to save her IIED claim. To the contrary, district courts in this circuit have consistently held that alleged discrimination alone does not rise to the level of outrageousness necessary to establish IIED. *See, e.g.*, *Lei Ke v. Drexel Univ.*, No. 11-6708, 2013 WL 1092661, at *13 (E.D. Pa. March 14, 2012); *Jakimowicz v. City of Philadelphia*, No. 07-3327, 2008 WL 383329, at *3 (E.D. Pa. Feb. 12, 2008); *Horvath v. Rimtec Corp.*, 102 F. Supp. 2d 219, 236 (D.N.J. 2000).

Assuming, *arguendo*, Plaintiff could establish that Firman engaged in "extreme and outrageous" conduct, her IIED claim would nonetheless fail because the summary judgment record is devoid of any evidence – aside from the Plaintiff's uncorroborated deposition testimony – that she suffered severe emotional distress as a result of Firman's conduct. In fact, the Plaintiff concedes that she has offered no competent medical evidence in support of her claim. *See* Resp. to Mot. For Summ. J. at 1. Such evidence is, however, required under Pennsylvania law. *See Kazatsky*, 527 A.2d at 995 (concluding that, "at the very least, existence of the alleged emotional distress must be supported by competent medical evidence"). Accordingly, because Firman's conduct was not "extreme and outrageous" and because the Plaintiff has not set forth any evidence of severe emotional distress, Defendants' Motion for Summary Judgment will be **GRANTED** with regard to the Plaintiff's claim for IIED.[2]

---

[2] Defendants also argue in a cursory manner that there is insufficient evidence to support holding Firman liable in his "individual capacity," without citing any authority in support of this contention or even explaining to which of the Plaintiff's two claims it pertains. *See* Defs.' Mem. in Support of Mot. for Summ. J. at 7 (ECF Doc. No. 36). Because the Court will grant Defendants' Motion for Summary Judgment with respect to both of the Plaintiff's claims for the reasons set forth in detail above, the Court need not attempt divine the possible import of this distinction.

**IV.     Conclusion**

For the reasons hereinabove set forth, the Defendants' Motion for Summary Judgment will be granted.

An appropriate Order follows.

                                                                               McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | )
|---|---|
| AMARIS WHITAKER, | ) |
|         Plaintiff, | ) |
| | ) 2:12-cv-224 |
| v | ) |
| BERNARD FIRMAN | ) |
| and OHM ENTERTAINMENT, INC., | ) |
| *doing business as* | ) |
| STATIC, | ) |
|         Defendants. | ) |

## ORDER OF THE COURT

AND NOW, this 20th day of August, 2013, for the reasons set forth in the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that DEFENDANTS' MOTION FOR SUMMARY JUDGMENT is **GRANTED**. The Clerk shall docket this case closed.

                        BY THE COURT:

                        s/ Terrence F. McVerry
                        United States District Court Judge

cc:    **John F. Mizner, Esq.**
        Email: jfm@miznerfirm.com

        **Joseph M. Kanfer, Esq.**
        Email: jmk@miznerfirm.com

        **Anthony R. Sosso, Jr.**
        Email: tsosso@sossolaw.com